JOSHUA HOYLE & SONS, LTD., INC. *v.* UNITED STATES (No. 4055)[1]

United States Court of Customs and Patent Appeals, October 25, 1937

*James W. Bevans* for appellant.

*Joseph R. Jackson*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, and *Marcus Higginbotham, Jr.*, special attorney, of counsel), for the United States.

[Oral argument October 4, 1937, by Mr. Bevans and Mr. Lawrence]

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

This is an appeal from a judgment of the United States Customs Court, First Division, holding that appellant was not entitled to a refund of duties as drawback on certain exported bleached and mercerized cotton cloth.

[1] T. D. 49244.

On or about February 9, 1928, appellant imported cotton cloth in the "gray" state, under the Tariff Act of 1922. The cloth was bleached and mercerized for appellant by the Bradford Dyeing Association, Bradford, R. I., on or about June 7, 1930, and exported by appellant, on or about February 28, 1931.

The trial court was of opinion, one judge dissenting, that the processes of bleaching and mercerizing to which the cotton cloth had been subjected subsequent to its importation into the United States were not sufficient "to create a new article entitled to be classed as manufactured or produced in the United States with the use of imported merchandise," within the purview of section 313 of the Tariff Act of 1922.

The involved merchandise was exported after the enactment of the Tariff Act of 1930; nevertheless, appellant was entitled to the rights and privileges conferred by section 313, *supra*. *The Mengel Co.* v. *United States*, 20 C. C. P. A. (Customs) 399, T. D. 46232.

The pertinent part of section 313, *supra*, reads:

SEC. 313. That upon the exportation of articles manufactured or produced in the United States with the use of imported merchandise, the full amount of the duties paid upon the merchandise so used shall be refunded as drawback, less 1 per centum of such duties, * * * The imported merchandise used in the manufacture or production of articles entitled to drawback of customs duties when exported shall, in all cases where drawback of duties paid on such merchandise is claimed, be identified, the quantity of such merchandise used and the amount of duties paid thereon shall be ascertained, the facts of the manufacture or production of such articles in the United States and their exportation therefrom shall be determined, and the drawback due thereon shall be paid to the manufacturer, producer, or exporter, the agent of either, or to the person to whom such manufacturer, producer, exporter, or agent shall in writing order such drawback paid, under such regulations as the Secretary of the Treasury shall prescribe.

Although the details of the processes to which the merchandise at bar was subjected were not disclosed, it appears from the record that it was bleached and mercerized, and that, after such processing, it was known as "regular mercerized shirting, finished white."

Illustrative Exhibit B consists of a small piece of cloth, and is representative of the cotton cloth as imported.

Illustrative Exhibit D consists of a small piece of cloth, and is representative of the exported mercerized shirting.

In answer to a question propounded by Presiding Judge McClelland, Stanley R. Fenn, secretary of the appellant company, the only witness called on the trial below, stated: "Well, the two cloths [Illustrative Exhibits B and D] are entirely different. The first cloth [Illustrative Exhibit B, the cloth in the 'gray' state] is not suitable for retail—for manufacture at all."

At the time of the oral arguments in this court, counsel for each of the parties stated in open court that what the witness meant by

the statement hereinbefore quoted was that the cloth in its imported condition, that is, in the "gray" state, was not commercially suitable to be manufactured into articles, and that, before it could be so used, it was necessary to subject it to further manufacturing processes.

Generally speaking, the mercerizing process consists in treating cotton yarn or cloth with a solution of "caustic alkali." If the yarn or cloth is kept under tension during the process, it assumes a silky luster (Webster's New International Dictionary). "This effect [the silky luster] is due to the changed structure of the fibres, which, under the action of the mercerizing treatment while under tension, become straight translucent tubes with a small round central opening instead of the spiral collapsed and flattened tube of the cotton fibre. The lustre is due to the fact that the surface becomes smooth and reflects light like the silk fibre. Mercerizing is now effected by machine processes." New International Encyclopaedia of 1930, Vol. 15, p. 421. See also Thorpe's Dictionary of Applied Chemistry, Vol. IV, pp. 261 to 264, inclusive.

We are not informed by the evidence of record as to the commercial use or uses of "mercerized shirting." However, although we attempt no definition of "shirting," it is undoubtedly a cloth suitable for making shirts, a use, according to the record, for which the cotton cloth in the "gray" state was commercially unsuitable.

In the case of *Rolland Frères, Inc.* v. *United States*, 23 C. C. P. A. (Customs) 81, T. D. 47763, and again in the case of *Howard Hardy & Co., Inc.* v. *United States*, 25 C. C. P. A. (Customs) 16, T. D. 48978, this court held that, in order to come within the provisions of section 313, *supra*, imported merchandise must be transformed so as to become a new and different article "having a distinctive name, character, or use," and, in so holding, followed the decision of the Supreme Court in the case of *Anheuser-Busch Brewing Association* v. *United States*, 207 U. S. 556.

Whether the involved merchandise comes within the principles announced in those decisions, is a question not free from difficulty. However, it appears, as argued by counsel for appellant and not denied by counsel for appellee, that it has been the long-continued administrative practice to allow a refund of duties, as drawback, on cotton cloth imported in the "gray" state and subsequently bleached and mercerized, and, as so processed, exported to a foreign country.

On March 3, 1915, T. D. 35184, 28 Treas. Dec. 326, December 10, 1915, T. D. 35965, 29 Treas. Dec. 647, and January 12, 1916, T. D. 36060, 30 Treas. Dec. 51, the Treasury Department held that cotton goods, which had been bleached and mercerized, were manufactured or produced within the purview of paragraph O of section 4 of the tariff act of 1913, and drawback was allowed on such goods.

The provisions there in question, which read:

That upon the exportation of articles manufactured or produced in the United States by the use of imported merchandise or materials upon which customs duties have been paid, the full amount of such duties paid upon the quantity of materials used in the manufacture or production of the exported product shall be refunded as drawback, less 1 per centum of such duties * * *,

were not materially different from the provisions of section 313, *supra*, here under consideration.

Such administrative practice continued under the provisions of section 313, *supra*, and also under the provisions of section 313 (a) of the Tariff Act of 1930. See T. D. 44907, dated May 22, 1931, 59 Treas. Dec. 1216, 1217; T. D. 45088 (T), dated August 1, 1931, 60 Treas. Dec. 296, 297.

In the case at bar, the collector denied a refund of duties as drawback solely because the involved merchandise was not exported "within three years after importation of the imported merchandise," as provided in section 313 (h) of the Tariff Act of 1930.

It may be said that *The Mengel Co.* case, *supra*, wherein this court held that the limitation contained in section 313 (h), *supra*, had no application to merchandise imported under the Tariff Act of 1922, had not been decided at the time of the collector's decision denying drawback in the case at bar.

The Congress having reenacted the quoted provisions of paragraph O of section 4, *supra*, without material change, so far as the issues here are concerned, as section 313 of the Tariff Act of 1922, we think the doctrine of legislative approval of long-continued administrative practice is applicable to, and determinative of, the issues here presented and that appellant is entitled to a refund of duties as drawback, as provided in section 313, *supra*. *Bache & Co.* v. *United States*, 11 Ct. Cust. Appls. 314, T. D. 39129; *United States* v. *R. H. Comey Brooklyn Co.*, 16 Ct. Cust. Appls. 248, T. D. 42843.

For the reasons stated, the judgment is *reversed*.